

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-178-CV**

IN THE INTEREST OF M.L.J., A CHILD

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellants William J. and Monica J. appeal the termination of their parental rights to their son, M.L.J. In four issues, Monica argues that the evidence is legally and factually insufficient to support the termination order and that the trial court erred by entering a finding that she failed to comply with the trial court's orders. In two issues, William argues that the evidence is legally

---

[1] *See* TEX. R. APP. P. 47.4.

and factually insufficient to support the jury's affirmative termination findings under subsections (N) and (O) of section 161.001(1) of the family code. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

M.L.J. is the biological son of William and Monica, who are married and both mildly mentally retarded. M.L.J. was born on July 14, 2006, and is William's and Monica's fifth child. Monica's mother has custody of their first child; they voluntarily relinquished their parental rights to their other three children.

The hospital released M.L.J to William and Monica on or about July 18, 2006, and William and Monica took him home with them. Joel Nickerson, an investigator for Child Protective Services (CPS) then, received a report the following day that Monica had given birth to M.L.J., that there was a history of involvement between Monica, William, and CPS, and that there were concerns about Monica's and William's ability to care for M.L.J. Nickerson visited their home the next day and met only William there. Nickerson was familiar with William's and Monica's CPS history, and he "was looking for things that might have changed with the family, ways that they might have improved," in addition to "indicators that they still had problems caring for their children." Nickerson inspected the house and "wasn't concerned about [its]

2

condition . . . in particular," although it had clutter and a number of cats, but his conversation with William gave him concern because Nickerson could not get William to tell him any particulars about what he and Monica were doing to care for M.L.J.

Nickerson learned shortly after his first visit to William's and Monica's residence that Monica and M.L.J. were staying with Monica's mother, which CPS supported because it was CPS's position that M.L.J. should either reside with Monica's mother or near her so that Monica and William would have someone to provide assistance in caring for M.L.J. According to Nickerson,

> our hope was that - - that Monica would continue staying with [her mother]. I think it had been made clear to her in the past couple of [cases] that if she had let [her mother] have an active role in seeing her children, helping care for her children on a day-to-day basis, that was fine. So our hope was that she was going to stay with [her mother] for a while at least.

A day or two thereafter, however, Nickerson learned that Monica had returned to her home with M.L.J., so Nickerson visited their residence once again on or about July 25, 2006. While Nickerson visited with Monica briefly, he observed that she was not paying any attention to M.L.J as she held him and that his head was "sort of rolling around." Having "extreme concerns" about risks to M.L.J.'s health, safety, or both and without a court order, Nickerson took possession of M.L.J. and removed him from William's and

3

Monica's residence. When Nickerson told Monica that he was removing M.L.J., Monica responded, "Take him. I don't even want him."

Appellee Department of Family and Protective Services (DFPS) filed its petition for protection of M.L.J., for conservatorship, and for termination in suit affecting the parent-child relationship on July 26, 2006. DFPS alleged that the trial court should terminate William's and Monica's parental rights to M.L.J. if reunification could not be achieved.

The trial court conducted a family code section 262.201 adversary hearing on August 4, 2006, and entered a temporary order naming DFPS temporary managing conservator of M.L.J. and William and Monica temporary possessory conservators with two hours of supervised visitation every other week. *See* TEX. FAM. CODE ANN. § 262.201 (Vernon Supp. 2007). The trial court ordered William and Monica to contact Denton County Mental Health Mental Retardation (MHMR) for an intake evaluation and to follow all recommendations made by MHMR, to participate in and successfully complete parenting classes, and to apply for services with the Texas Rehabilitation Commission (TRC), among other things. The order further specifically stated as follows:

> The Court finds and hereby notifies the parents that each of the
> actions required of them below are necessary to obtain the return

4

of the subject child, and failure to fully comply with these orders may result in the restriction or termination of parental rights.

William's and Monica's trial began on May 14, 2007. Both testified that they visited M.L.J. only twice since his removal—once at the beginning of the case (on or about August 14, 2006) and once at some point during the week before trial. William and Monica also testified that they did not contact MHMR, attend parenting classes, or apply for services with the TRC as ordered by the trial court; Monica opined that she "just didn't think that [the services] would do any good" even though the trial court had told her and William that they had to perform the services because they were court ordered. Monica testified she was aware that the purpose of the services to be completed was to have M.L.J. returned to her, and William agreed that he had been advised at all of the hearings concerning M.L.J.'s case about what he had to do to regain custody of M.L.J.

Nichelle Wiggins, a licensed clinical psychologist, testified about the psychological evaluations that she had conducted of William and Monica for CPS. Wiggins concluded that there would be a very high probability of risk to a small child in the care of William and Monica without appropriate support and assistance.

5

CASA worker Lori Powell testified that she discussed with William and Monica at the adversary hearing the services that the trial court had ordered them to perform and that Monica told her that "she was not going to do the services that CPS was going to ask her to do." Powell testified that she had asked Monica "many times" throughout the pendency of the case for names and phone numbers of individuals who were willing to provide assistance if M.L.J. was returned to William and Monica, but Monica refused to give her any names. Due to concerns about M.L.J.'s safety and considering William's and Monica's ability to care for M.L.J. and provide a safe environment, Powell testified that it is in M.L.J.'s best interest that William's and Monica's parental rights to him be terminated.

CPS caseworker Shelby Johnson worked on M.L.J.'s case and testified that, having attended the adversary hearing, it was her understanding that William and Monica would not be performing any services. To Johnson's knowledge, they also never obtained any support in caring for M.L.J.; William and Monica refused any type of help from the very beginning of M.L.J.'s case. Johnson opined that it is in M.L.J.'s best interest to terminate William's and Monica's parental rights to him.

The jury found by clear and convincing evidence that William and Monica had constructively abandoned M.L.J., who had been in the temporary managing

6

conservatorship of DFPS or an authorized agency for not less than six months, and DFPS or an authorized agency made reasonable efforts to return M.L.J. to William and Monica, William and Monica had not regularly visited or maintained significant contact with M.L.J., and William and Monica had demonstrated an inability to provide M.L.J. with a safe environment; that William and Monica failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of M.L.J., who had been in the permanent or temporary managing conservatorship of DFPS for not less than nine months as a result of his removal from William and Monica for the abuse or neglect of M.L.J.; and that termination of the parent-child relationship between William and Monica and M.L.J. is in M.L.J.'s best interest. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(N), (O), 161.001(2) (Vernon Supp. 2007). The trial court signed an order consistent with the jury's affirmative findings terminating the parental rights of William and Monica to M.L.J. The trial court later denied William's and Monica's motions for new trial and determined that their appeals are frivolous. This appeal followed.

7

## III. FRIVOLOUS DETERMINATION

DFPS initially argues that we may not address William's and Monica's arguments because neither William nor Monica have specifically challenged the trial court's post-trial determination that their appeals are frivolous. *See* TEX. FAM. CODE ANN. § 263.405(d)(3). Both William and Monica filed appellate briefs raising numerous issues, however. We will therefore treat William's and Monica's briefs as challenging not only the termination order but also the trial court's finding that the appeals are frivolous.

In determining whether an appeal is frivolous, "a judge may consider whether the appellant has presented a substantial question for appellate review." TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b) (Vernon 2002); TEX. FAM. CODE ANN. § 263.405(d)(3). "It is well established, however, that a proceeding is 'frivolous' when it 'lacks an arguable basis either in law or in fact.'" *De La Vega v. Taco Cabana, Inc.*, 974 S.W.2d 152, 154 (Tex. App.—San Antonio 1998, no pet.). We review a trial court's finding of frivolousness under an abuse of discretion standard. *Id*.; *In re K.D.*, 202 S.W.3d 860, 866 (Tex. App.—Fort Worth 2006, no pet.).

We have reviewed the entire record on appeal and thoroughly considered William's and Monica's arguments. The record shows an arguable basis in law or fact for William's and Monica's challenges to the trial court's termination

8

order.  William and Monica have accordingly presented a substantial question for appellate review.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b); TEX. FAM. CODE ANN. § 263.405(d)(3); *De La Vega*, 974 S.W.2d at 154.  We hold that William's and Monica's appeal from the termination order is not frivolous and that the trial court abused its discretion in so finding.

## IV.  TERMINATION ORDER ERROR

In Monica's first issue, she argues that the trial court erred by finding that she failed to comply with the trial court's orders requiring her to participate in certain services because the termination order provides that she failed to comply with the provisions of a court order that specifically established the actions necessary for the "father," not her (the mother), to obtain the return of M.L.J.[2]  Although Monica did not assert this argument in her motion for new

---

[2]  DFPS argues that Monica failed to preserve for appellate review her first issue that termination under section 161.001(1)(O) was erroneous, part of her third issue challenging the sufficiency of the evidence to support the jury's affirmative section 161.001(1)(N) termination ground finding, and her fourth issue that termination is not in M.L.J.'s best interest because she did not specifically include these arguments in a timely filed statement of points or in a statement combined with a motion for new trial.  *See* TEX. FAM. CODE ANN. § 263.405(i) (stating that an appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial).  In a recent en banc decision, this court held that family code section 263.405(i) is void as a violation of the separation of powers provision of the Texas constitution.  *See In re D.W.*, No. 02-06-00191-CV, 2008 WL 467328, at *12 (Tex. App.—Fort Worth Feb. 19, 2008, pet. filed)

9

trial, we have the power to reform a judgment when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); *In re M.D.*, No. 05-06-00779-CV, 2007 WL 1310966, at *1–2 (Tex. App.—Dallas May 7, 2007, no pet.). It is apparent that this is a clerical error in the drafting of the termination order; the error is located within the trial court's finding that termination of Monica's parent-child relationship with M.L.J. is appropriate under family code section 161.001(1)(O) and under the heading, "Termination of Respondent Mother [Monica's] Parental Rights," which is consistent with the jury's affirmative section 161.001(1)(O) termination ground finding. And as DFPS points out, the record reflects that Monica knew and understood that the trial court had ordered her near the beginning of the case to participate in a number of services necessary for her to obtain the return of M.L.J. Accordingly, we reform the fourth paragraph of number "6" in the trial court's May 24, 2007 termination order as indicated by the following italicized word: "failed to comply with the provisions of a court order that specifically established the actions

---

(en banc). We are bound to follow our own precedent, so we will consider the merits of Monica's first, third, and fourth issues to the extent they are necessary to the resolution of her appeal. *See* TEX. R. APP. P. 47.4.

necessary for the *mother* to obtain the return of the child." Having reformed the termination order, we overrule Monica's first issue.

**V. SUFFICIENCY ARGUMENTS**

William argues in his first issue and Monica argues in her second issue that the evidence is legally and factually insufficient to support the trial court's termination finding under family code section 161.001(1)(O) because DFPS failed to prove by clear and convincing evidence that it removed M.L.J. from William and Monica for abuse or neglect. Monica further argues in her fourth issue that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in M.L.J.'s best interest. DFPS responds that the evidence is legally and factually sufficient to support the section 161.001(1)(O) termination finding and best interest finding.

### A. Standard of Review

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2002).

11

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). In reviewing the evidence for factual sufficiency, we must give due deference to the fact-finder's findings and not supplant the verdict with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B.    Section 161.001(1)(O) Evidentiary Sufficiency Challenge

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been

12

in the permanent or temporary managing conservatorship of DFPS for not less than nine months *as a result of the child's removal from the parent under family code chapter 262 for the abuse or neglect of the child*.  *See* TEX. FAM. CODE ANN. § 161.001(1)(O).  Under section 262.104, if there is no time to obtain a temporary restraining order or attachment before taking possession of a child consistent with the health and safety of that child, an authorized representative of DFPS may take possession of a child without a court order on personal knowledge of facts or on information furnished by another that has been corroborated by personal knowledge of facts that "would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child."  *Id*. § 262.104(a)(1), (2) (Vernon Supp. 2007).

Here, the primary thrust of William's and Monica's arguments is that M.L.J. was not removed for any actual abuse or neglect but rather because of a risk or fear of abuse or neglect.  The evidence showed that CPS had strong concerns about William's and Monica's ability to safely care for M.L.J.  CPS had removed their previous four children, and William and Monica relinquished their parental rights to three of the children.  Nickerson opined that William and Monica did not have the skills necessary to care for M.L.J. on a day-to-day basis, and he testified that there are "extreme concerns" about risks to M.L.J.,

13

including a concern that William and Monica would flee the county as they had when they moved away from Dallas County to avoid Dallas CPS. At Nickerson's first visit to their residence, with the exception of how often M.L.J. had been eating and sleeping, Nickerson was unable to get William to tell him any particulars about what he and Monica were doing to care for M.L.J. And during his second visit to their residence, M.L.J.'s head was "rolling around" as Monica held him and spoke to Nickerson. Although Nickerson sought to observe any "indicators of change" demonstrating that his concerns for M.L.J.'s care and safety had been resolved during his visits to their residence, he was unpersuaded that William and Monica had made any significant progress.

Nickerson testified that he removed M.L.J. from William's and Monica's residence not only because of their "lack of skills," which was due in large part to their mental retardation, but also because they had no desire to seek help with caring for M.L.J. According to Nickerson, CPS had told Monica "numerous times" that she needed assistance (someone other than William) raising her children, including M.L.J. Monica told CPS that she would have someone help her care for her children, "and she didn't follow through. And so in this particular case, she had also said she would have [her mother] help her, and then all of [a] sudden she showed up in Denton again on her own."

14

Powell's and Johnson's testimony that Monica had indicated an intent not to participate in the court-ordered programs is consistent with Monica's noncompliance with CPS's plan that she and William accept help with caring for M.L.J. The significance of CPS's desire that William and Monica have assistance in caring for M.L.J. is apparent because Nickerson testified that he would not have removed M.L.J. if Monica and William sought help with M.L.J. He testified as follows:

> [DFPS attorney]: If Monica had decided to stay with a family member, what was the Department's position on that? What would have been that option?
>
> [Nickerson]: It would have been my . . . decision to leave her alone as long as she was willing to stay with [her mother]. That was a good situation as far as we were concerned, and I would have - - I would have left the case there.

Wiggins's testimony corroborated Nickerson's (and CPS's) concern about the danger to M.L.J.'s health or safety. She testified that Monica had previously told her that William once struck her in the stomach while she was pregnant in 2003, that William once shook one of their children because he was angry, and that she did not feel like the children would be safe around him. Wiggins explained that William and Monica are both mildly mentally retarded, that Monica's emotional evaluation demonstrated that she has difficulty accepting that she needs assistance with children, and that there "would be a

15

very high probability of risk" to a child in William's and Monica's care without support and assistance.

The evidence demonstrated that Nickerson had personal knowledge of facts or information furnished by another that had been corroborated by personal knowledge of facts that "would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of" M.L.J. *See id*. Considering the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's section 161.001(1)(O) termination finding. We overrule William's first issue and Monica's second issue.

## C. Best Interest

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (Vernon 2002). There is also a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

16

(3)     the emotional and physical danger to the child now and in the future;

(4)     the parental abilities of the individuals seeking custody;

(5)     the programs available to assist these individuals to promote the best interest of the child;

(6)     the plans for the child by these individuals or by the agency seeking custody;

(7)     the stability of the home or proposed placement;

(8)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27.

Here, Monica argues that the evidence was insufficient to support the trial court's best interest finding because DFPS presented no evidence of M.L.J.'s desires and physical or emotional needs and because she was taking advantage of programs "to assist her with her caring for" M.L.J., which included Social Security Disability benefits, Medicaid, WIC, and public transportation. However, in light of the evidence that William and Monica refused to cooperate

17

with CPS's plan that they have assistance with caring for M.L.J., that multiple individuals considered there to be a high risk to M.L.J. or any child in their care, and that their ability to appropriately care for a child is significantly affected by their mental retardation, the factors including the emotional and physical needs of M.L.J. now and in the future, the emotional and physical danger to M.L.J. now and in the future, and the programs available to assist William and Monica in promoting the best interest of M.L.J. all weigh heavily in favor of the finding that termination is in M.L.J.'s best interest. Considering the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Monica's parental rights to M.L.J. is in M.L.J.'s best interest. Accordingly, we overrule Monica's fourth issue.

Because we have held that the evidence is legally and factually sufficient to support the trial court's section 161.001(1)(O) finding, we need not determine whether the evidence is legally and factually sufficient to support the trial court's section 161.001(1)(N) finding, which William and Monica also challenge. *See In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (stating that Petitioner must establish only one ground listed under subsection 161.001(1)).

18

## VI. CONCLUSION

Having overruled William's first issue and Monica's first, second, and fourth issues and determined that we need not consider William's second issue and Monica's third issue, we affirm the trial court's judgment.

DIXON W. HOLMAN
JUSTICE

PANEL M:  DAUPHINOT, HOLMAN, and WALKER, JJ.

DELIVERED:  May 1, 2008

19